**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| Tamekka Casey, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 2:24-cv-12709 |
| | § | |
| National Credit Systems, Inc.; Experian Information Solutions, Inc.; and Equifax Information Services, LLC, | § § § § | |
| Defendants. | § § | |

## COMPLAINT

## INTRODUCTION

1.      This action arises out of Defendants' violations of the Fair Credit Reporting Act ("FCRA") and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq, whereby Plaintiff discovered inaccurate information reporting on her consumer credit reports, disputed that inaccurate information, and Defendants willfully or negligently refused to correct the inaccurate information on Plaintiff's consumer credit reports, damaging Plaintiff.

## PARTIES

2.      Plaintiff is, and was at all times hereinafter mentioned, a resident of the County of Wayne, Michigan.

3.      At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

4.      Defendant, National Credit Systems, Inc., ("NCS") is and at all times relevant hereto was, a collections institution regularly doing business in the State of Michigan.

5.      At all times pertinent hereto, Defendant NCS was a "person" as that term is defined in 15 U.S.C. §1681a(b) and also a "furnisher" of credit information as that term is described in 15 U.S.C. §1681s-2 *et seq.*

6.      NCS is a "debt collector" as defined by § 1692a(6).

7.      Defendant, Equifax Information Services, LLC ("Equifax"), is a credit reporting agency, licensed to do business in Michigan and at all times relevant hereto was, regularly doing business in the State of Michigan.

8.      Defendant Experian Information Solutions, Inc., ("Experian"), is a credit reporting agency, licensed to do business in Michigan and all times relevant hereto was, regularly doing business in the State of Michigan.

9.      Experian and Equifax are regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d), to third parties.

10.     Experian and Equifax furnish such consumer reports to third parties under contract for monetary compensation.

11.     At all times pertinent hereto, Defendant Experian and Equifax were each a "person" and "consumer reporting agency" as those terms are defined by 15 U.S.C. §1681a(b) and (f), licensed to do business in Michigan.

## <u>JURISDICTION AND VENUE</u>

12.     This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1681p, 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1331.

13.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b) and as the Plaintiff resides in and the injury occurred in Wayne County, Michigan and Defendants do business in Michigan.

14.     Personal jurisdiction exists over Defendants as Plaintiff resides in Michigan, Defendants have the necessary minimum contacts with the state of Michigan, and this suit arises out of specific conduct with Plaintiff in Michigan.

## FACTUAL ALLEGATIONS

15.     Plaintiff is a consumer who is the victim of inaccurate reporting by Defendant NCS, Experian, and Equifax (collectively, "Defendants"), and has suffered particularized and concrete harm.

16.     Experian and Equifax are two of the largest consumer reporting agencies ("CRAs") as defined by 15 U.S.C. §1681a(f).

17.     The CRAs' primary business is the sale of consumer reports (commonly referred to as "credit reports") to third parties and consumers.

18.     Experian and Equifax each have a duty, under the FCRA, to follow reasonable procedures to ensure that the consumer reports they sell meet the standard of "maximum possible accuracy." 15 U.S.C. §1681e(b).

19.     The NCS debt account in question arises from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes.

20.     NCS acquired the debt after it was allegedly in default.

21.     NCS uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts.

22.     NCS regularly collects or attempts to collect, directly or indirectly, debts once owed or due, or once asserted to be owed or due.

23.     On or around April 2024, Plaintiff discovered Defendant NCS was erroneously reporting an NCS account ("Account") with a past due balance on Plaintiff's Experian and Equifax consumer reports.

24.     The original creditor for the Account is Strong Future Homes, an apartment complex Plaintiff previously resided at.

25.     When Plaintiff's lease with Strong Future Homes ended, Plaintiff's financial obligations owed to Strong Future Homes were fully satisfied.

26.     Because Plaintiff's financial obligations owed to Strong Future Homes were fully satisfied, the Account is not accurate and should not have been opened with NCS.

27.     The false information regarding the NCS Account appearing on Plaintiff's consumer reports harms the Plaintiff because it does not accurately depict Plaintiff's credit history and creditworthiness.

### PLAINTIFF'S WRITTEN DISPUTE

28.     On or about April 2024, Plaintiff sent a written dispute to Experian ("Experian Dispute"), disputing the inaccurate information regarding the NCS Account reporting on Plaintiff's Experian consumer report.

29.     On or about April 2024, Plaintiff sent a written dispute to Equifax ("Equifax Dispute"), disputing the inaccurate information regarding the NCS Account reporting on Plaintiff's Equifax consumer report.

30.     Upon information and belief, Experian and Equifax forwarded Plaintiff's Experian Dispute and Equifax Dispute (collectively "Dispute Letters") to Defendant NCS.

31.     Upon information and belief, NCS received notification of Plaintiff's Dispute Letter from Experian and Equifax.

32.     Upon information and belief, NCS verified the erroneous information associated with the Account to Experian and Equifax.

33.     NCS did not conduct an investigation, contact Plaintiff, contact third-parties, or review underlying account information with respect to the disputed information and the accuracy of the NCS Account.

34.     Experian did not conduct an investigation, contact Plaintiff, contact third-parties, or review underlying account information with respect to the disputed information and the accuracy of the NCS Account.

35.     Equifax did not conduct an investigation, contact Plaintiff, contact third-parties, or review underlying account information with respect to the disputed information and the accuracy of the NCS Account.

36.     Upon information and belief, NCS failed to instruct Experian and Equifax to remove the false information regarding the NCS Account reporting on Plaintiff's consumer reports.

37.     Experian and Equifax employed an investigation process that was not reasonable and did not remove the false information regarding the Account identified in Plaintiff's Dispute Letters.

38.     At no point after receiving the Dispute Letters did NCS, Experian, and or Equifax communicate with Plaintiff to determine the veracity and extent of Plaintiff's Dispute Letters.

39.     Experian and Equifax relied on their own judgment and the information provided to them by NCS, rather than grant credence to the information provided by Plaintiff.

### COUNT I – EXPERIAN

### FAIR CREDIT REPORTING ACT VIOLATION – 15 U.S.C. §1681e(b)

40.     Plaintiff re-alleges and reaffirms the above paragraphs as though fully set forth herein.

41.     After receiving the Experian Dispute, Experian failed to correct the false information regarding the NCS Account reporting on Plaintiff's Experian consumer report.

42.     Defendant Experian violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files Defendant Experian published and maintained concerning Plaintiff.

43.     As a result of this conduct, action, and inaction of Defendant Experian, Plaintiff suffered damage, and continues to suffer, actual damages, including economic loss, damage to reputation, emotional distress, and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the trier of fact.

44.     Defendant Experian's conduct, action, and inaction was willful, rendering Defendant Experian liable to Plaintiff for punitive damages pursuant to 15 U.S.C. §1681n.

45.     In the alternative, Defendant Experian was negligent, entitling Plaintiff to recover damages under 15 U.S.C. §1681o.

46.     Plaintiff is entitled to recover costs and attorneys' fees from Defendant Experian, pursuant to 15 U.S.C. §1681n and/or §1681o.

## COUNT II – EXPERIAN

### FAIR CREDIT REPORTING ACT VIOLATION – 15 U.S.C. §1681(i)

47.     Plaintiff re-alleges and reaffirms the above paragraphs as though fully set forth herein.

48.     After receiving the Experian Dispute, Experian failed to correct the false information regarding the NCS Account reporting on Plaintiff's Experian consumer report.

49.     Defendant Experian violated 15 U.S.C. §1681i by failing to delete inaccurate information in Plaintiff's credit files after receiving actual notice of such inaccuracies, by failing to conduct lawful reinvestigations, and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit files.

50.     As a result of this conduct, action and inaction of Defendant Experian, Plaintiff suffered damage, and continues to suffer, actual damages, including economic loss, damage to reputation, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the trier of fact.

51.     Defendant Experian's conduct, action, and inaction was willful, rendering Defendant liable to Plaintiff for punitive damages pursuant to 15 U.S.C. §1681n.

52.     In the alternative, Defendant Experian was negligent, entitling Plaintiff to recover damages under 15 U.S.C. §1681o.

53.     Plaintiff is entitled to recover costs and attorneys' fees from Defendant Experian pursuant to 15 U.S.C. §1681n and/or §1681o.

COUNT III – EQUIFAX

FAIR CREDIT REPORTING ACT VIOLATION – 15 U.S.C. §1681e(b)

54.     Plaintiff re-alleges and reaffirms the above paragraphs as though fully set forth herein.

55.     After receiving the Equifax Dispute, Equifax failed to correct the false information regarding the NCS Account reporting on Plaintiff's Equifax consumer report.

56.     Defendant Equifax violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files Defendant Equifax published and maintained concerning Plaintiff.

57.     As a result of this conduct, action, and inaction of Defendant Equifax, Plaintiff suffered damage, and continues to suffer, actual damages, including economic loss, damage to reputation, emotional distress, and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the trier of fact.

58.     Defendant Equifax's conduct, action, and inaction was willful, rendering Defendant Equifax liable to Plaintiff for punitive damages pursuant to 15 U.S.C. §1681n.

59.     In the alternative, Defendant Equifax was negligent, entitling Plaintiff to recover damages under 15 U.S.C. §1681o.

60.     Plaintiff is entitled to recover costs and attorneys' fees from Defendant Equifax, pursuant to 15 U.S.C. §1681n and/or §1681o.

**COUNT IV – EQUIFAX**

**FAIR CREDIT REPORTING ACT VIOLATION – 15 U.S.C. §1681(i)**

61.     Plaintiff re-alleges and reaffirms the above paragraphs as though fully set forth herein.

62.     After receiving the Equifax Dispute, Equifax failed to correct the false information regarding the NCS Account reporting on Plaintiff's Equifax consumer report.

63.     Defendant Equifax violated 15 U.S.C. §1681i by failing to delete inaccurate information in Plaintiff's credit files after receiving actual notice of such inaccuracies, by failing to conduct lawful reinvestigations, and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit files.

64.     As a result of this conduct, action and inaction of Defendant Equifax, Plaintiff suffered damage, and continues to suffer, actual damages, including economic loss, damage to reputation, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the trier of fact.

65.     Defendant Equifax's conduct, action, and inaction was willful, rendering Defendant liable to Plaintiff for punitive damages pursuant to 15 U.S.C. §1681n.

66.     In the alternative, Defendant Equifax was negligent, entitling Plaintiff to recover damages under 15 U.S.C. §1681o.

67.     Plaintiff is entitled to recover costs and attorneys' fees from Defendant Equifax pursuant to 15 U.S.C. §1681n and/or §1681o.

**COUNT V – NCS**

**(FAIR CREDIT REPORTING ACT VIOLATION – 15 U.S.C. §1681S-2(B))**

68.     Plaintiff re-alleges and reaffirms the above paragraphs as though fully set forth herein.

69.     After receiving the Dispute Letters, NCS failed to correct the false information regarding the NCS Account reporting on Plaintiff's consumer reports.

70.     Defendant violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes of Defendant NCS's representations; by failing to review all relevant information regarding Plaintiff's dispute; by failing to accurately respond to credit reporting agencies; by verifying false information; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of Defendant NCS's representations to consumer credit reporting agencies, among other unlawful conduct.

71.     As a result of this conduct, action, and inaction of Defendant NCS, Plaintiff suffered damages, and continue to suffer, actual damages, including economic loss, damage to reputation, emotional distress, and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the trier of fact.

72.     Defendant NCS's conduct, action, and inaction was willful, rendering Defendant liable to Plaintiff for punitive damages pursuant to 15 U.S.C. §1681n.

73.     In the alternative, Defendant NCS was negligent, entitling Plaintiff to recover damages under 15 U.S.C. §1681o.

74.     Plaintiff is entitled to recover costs and attorneys' fees from Defendant NCS pursuant to 15 U.S.C. §1681n and/or 15 U.S.C. §1681o.

**COUNT VI – NCS**

**(Fair Debt Collection Practices Act Violation – 15 U.S.C. § 1692e)**

75.     Plaintiff realleges and reaffirms the above paragraphs as though fully set forth herein.

76.     Congress enacted the FDCPA to "eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (citing 15 U.S.C. § 1692(e)).

77.     "The FDCPA is a strict liability statute to the extent it imposes liability without proof of an intentional violation."  *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011).

78.     "It is a remedial statute that we 'construe . . . broadly, so as to effect its purpose.'" *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006)).

79.     More broadly, the FDCPA was enacted in order to eliminate abusive debt collection practices, which contribute to the number of personal bankruptcies, marital instability, loss of employment, and invasions of privacy as well as insure that debt collectors who refrain from using such practices are not competitively disadvantaged. *See, e.g.,* 15 U.S.C. § 1692(a), (e); *Lesher v. Law Offices of Mitchell N. Kay, PC,* 650 F.3d 993, 996 (3d Cir.2011); *Wilson,* 225 F.3d at 354.

80.     "[C]ourts have analyzed the statutory requirements [of the FDCPA] 'from the perspective of the least sophisticated debtor.'  This standard is less demanding than one that inquires whether a particular debt collection communication would mislead or deceive a reasonable debtor."  *Campuzano-Burgos v. Midland Credit Management, Inc.*, 550 F.3d 294, 298 (3d Cir. 2008) (quoting *Rosenau*, 539 F.3d at 221).

81.     "The basic purpose of the least-sophisticated [debtor] standard is to ensure that

the FDCPA protects all consumers, the gullible as well as the shrewd.  This standard is

consistent with the norms that courts have traditionally applied in consumer-protection law."

*Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148-49 (3d Cir. 2013)

(quoting *Lesher,* 650 F.3d at 997).

82.     The FDCPA creates a broad, flexible prohibition against the use of misleading,

deceptive, or false representations in the collection of debts.  *See* 15 U.S.C. § 1692e;

*Hamilton v. United Healthcare of Louisiana, Inc*., 310 F.3d 385, 392 (5th Cir. 2002) (citing

legislative history reference to the FDCPA's general prohibitions which "will enable the courts,

where appropriate, to proscribe other improper conduct which is not specifically addressed").

83.     Included as an example of conduct that violates section 1692e is the false

representation of the character, amount, or legal status of a debt.  15 U.S.C. § 1692e(2)(A).

84.     Thus, the plain-language of the FDCPA makes it clear that under the strict liability

framework, any false representation as to the amount of the debt is sufficient to show a violation

of the FDCPA.  *See Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004) ("§ 1692e(2)(A)

creates a strict-liability rule. Debt collectors may not make false claims, period."); *see also*

*Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003) ("under § 1692e

ignorance is no excuse").

85.     Under the same general prohibition of false, misleading, or deceptive debt

collection practices, the FDCPA prohibits a debt collector from "[c]ommunicating or

threatening to communicate to any person credit information which is known or which should

be known to be false. . . ."  15 U.S.C. § 1692e(8).

86.     NCS violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the Debts, including by reporting false information to the credit reporting agencies concerning Plaintiff, and by failing to correct the false information once disputed.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks a reasonable and fair judgment against Defendants, jointly and severally, for willful noncompliance of the Fair Credit Reporting Act and seeks statutory remedies as defined by 15 U.S.C. § 1681 and demands:

A.  Actual damages to be proven at trial, or statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A), of not less than $100 and not more than $1,000 per violation;

B.  Punitive damages, pursuant 15 U.S.C. § 1681n(a)(2), for Defendants' willful violation;

C.  The costs of instituting this action together with reasonable attorney's fees incurred by Plaintiff pursuant to 15 U.S.C. § 1681n(a)(3); and

D.  Any further legal and equitable relief as the court may deem just and proper in the circumstances.

**WHEREFORE**, Plaintiff seeks a reasonable and fair judgment against NCS for noncompliance of the Fair Debt Collection Practices Act and seeks remedies as defined by 15 U.S.C. § 1692 and demands:

E.  An adjudication that NCS violated 15 U.S.C. § 1692e;

F.  Plaintiff's statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

G.  Plaintiff's actual damages to be proven at trial, pursuant to 15 U.S.C. § 1692k(a)(1);

H.  Plaintiff's reasonable attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3);

Any further legal and equitable relief as the court may deem just and proper in the circumstances.


Respectfully submitted October 14, 2024


/s/ Joseph Panvini
Joseph Panvini
McCarthy Law, PLC
4250 North Drinkwater Blvd, Suite 320
Scottsdale, AZ  85251
Telephone: (602) 612-5016
Fax: (602) 218-4447
joe.panvini@mccarthylawyer.com
Attorney for Plaintiff